# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| ROBERT CLARK, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF ROBERT CLARK, JR. | Civil Action No.: 2:19-cv-00330-DCN-TER |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | **(Jury Trial Requested)** |
| THE BERKELEY COUNTY SHERIFF'S OFFICE; and JAMES VANSANT, in his individual capacity, and JOHN PETERS, in his individual capacity; | |
| Defendants. | |

Plaintiff, Robert Clark as Personal Representative of the Estate of Robert Clark, Jr., complaining of the above-named Defendants alleges and shows as follows:

## JURISDICTION AND VENUE

1. Decedent, Robert L. Clark, Jr., at all times herein, was a citizen and resident of Berkeley County, South Carolina. Plaintiff Robert Clark is the duly appointed Personal Representative of the Decedent's Estate which is being probated in Berkeley County. Plaintiff's certificate of appointment is attached hereto as Exhibit No. 1.

2. Plaintiff brings this wrongful death action on behalf of Decedent's parents pursuant to Section 15-51-10 of the South Carolina Code and brings this survival action on behalf of the Decedent's Estate pursuant to Section 15-5-90 of the South Carolina Code.

3. Upon information and belief, the Berkeley County Sheriff's Office is a state entity organized and created pursuant to the laws of the State of South Carolina. The Berkeley County Sheriff's Office is responsible for implementing and overseeing the policies, practices and customs

1

of the Berkeley County Sheriff's Office as well as for the hiring, training, supervision, controlling and disciplining of its deputies and other employees.

4. Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant James Vansant was a resident of Charleston County, South Carolina, was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy, and was on duty, acting individually and under the color of state law.

5. Upon information and belief, at the various times giving rise to this action, Defendant John Peters was employed by the Berkeley County Sheriff's Office as a Lieutenant and was on duty acting under the color of state law and in his individual capacity as an agent of the Berkeley County Sheriff's Office.

6. This Court has subject matter jurisdiction over all claims alleged, personal jurisdiction over the parties, and venue is proper in Berkeley County.

## FACTUAL BACKGROUND

7. On the evening of April 19, 2017, Robert Clark, Jr. was riding a Harley-Davidson motorcycle through Ladson, South Carolina.

8. Defendant Vansant was on duty that evening for the Berkeley County Sheriff's Office. Plaintiff is informed and believes that Vansant was sitting in his parked police cruiser outside of a hardware store on College Park Road less than one mile from Interstate 26 and listening to a talk radio station.

9. As Clark traveled down College Park Road from the direction of Interstate 26 toward the hardware store, Defendant Vansant purportedly observed him moving at 66 or 67 miles per hour. The posted speed limit on that portion of College Park Road is 45 miles per hour.

10. On information and belief, Defendant Vansant decided to pursue Clark's motorcycle for a speeding violation. Under South Carolina law, Clark would have been issued a traffic citation with a minimum fine of $75 for this alleged speeding violation.

11. Defendant Vansant thereafter commenced a vehicular pursuit of Clark. Plaintiff is informed and believes Defendant Vansant's decision to chase the decedent who posed no risk to the public and was guilty of a traffic citation at worst violated generally accepted policing standards.

12. Nonetheless Defendant Vansant initiated a police chase at recklessly high speeds and failed to maintain a safe distance between his police vehicle and Clark's motorcycle, in violation of the Berkeley County Sheriff's Office vehicle pursuit and traffic enforcement policies and procedures as well as generally accepted policing standards.

13. Defendant John Peters was the patrol lieutenant on the night shift and was deemed the designated supervisor tasked with monitoring and supervising the pursuit of Mr. Clark. As the designated supervisor Defendant Peters, at all times, possessed the authority and responsibility to terminate the pursuit as the ranking sheriff's deputy and designated supervisor.

14. Defendant Peters acknowledged by radio communication that he was actively monitoring and supervising the pursuit in this action, and Defendant Peters did actively supervise the pursuit. As the designated supervisor, Defendant Peters was actively involved in all matters leading up to the death of Mr. Clark.

15. Defendant Peters was aware the pursuit was being conducted at speeds well in excess of the posted speed limits through the pursuit route. Defendant Peters was also aware that Defendant Vansant was driving in excess of 90 miles per hour in areas where the posted speed limit was 45 miles per hour.

16. Defendant Peters was aware Defendant Vansant disregarded multiple traffic control devices and ran red lights continuing at a high rate of speed.

17. Defendant Peters was aware Defendant Vansant crossed out of Berkeley County and into Dorchester County without receiving express permission from him, but did nothing. Defendant Vansant never sought express permission to continue the pursuit outside of the jurisdiction of Berkeley County.

18. Defendant Peters was aware Defendant Vansant entered the Town of Summerville, South Carolina, driving at speeds in excess of 80 miles per hour where the general posted speed limit is approximately 35 miles per hour.

19. At no time during the pursuit was Defendant Peters made aware of the reason for the pursuit. At no time during the pursuit did Defendant Peters request the reason for the pursuit from Defendant Vansant or the secondary unit in the pursuit. In fact, other than to acknowledge that he was monitoring the pursuit as the designated supervisor. Defendant Peters made no radio calls to Vansant or the secondary unit in the pursuit whatsoever during the pursuit

20. At all times relevant herein, Defendant Peters was aware of the requirements and mandatory procedures of the Berkeley County Sheriff's Office as well as generally accepted policing practices with regard to vehicle pursuits. Despite Defendant Peters' actual knowledge of his duty and obligations to supervise and terminate the pursuit, Defendant Peters failed to terminate the pursuit of Mr. Clark when confronted with actual knowledge of the reckless and dangerous nature of the pursuit.

21. Defendant Peters possessed multiple instances requiring him to terminate the pursuit as would have been required by the designated supervisor and the internal policy and procedures as well as generally accepted police practices.

22. Approximately three and a half minutes after the pursuit began, Defendant Vansant, apparently fueled by the adrenaline rush from giving chase, repeatedly yelled aloud in his police cruiser, "You're going to die if you wreck! You're going to die if you wreck!"

23. Approximately five minutes after the pursuit began, Clark began to bring the motorcycle to a stop, causing his speed to slow and the rear brake lights to activate. Despite the decedent's efforts to slow down and/or stop his motorcycle Defendant Vansant struck the back of his motorcycle with his police utility cruiser which weighed in excess of 5,000lbs.

24. Plaintiff is informed and believes that at all times relevant hereto Defendant Vansant was well aware that his police utility cruiser is considered a deadly weapon and that he was forbidden pursuant to generally accepted policing standards and the Berkeley County Sheriff's office policies and procedures from striking or ramming the rear of decedent's motorcycle.

25. Despite Defendant Vansant striking Clark's motorcycle Clark was able to avoid crashing and remained upright on his motorcycle.

26. Approximately three seconds later, Defendant Vansant's police cruiser struck Clark a second time, this time sideswiping the left rear side of the motorcycle with such force to cause Clark and the motorcycle to be violently projected forward and into the right-side curb where he collided into the side of the stopped passenger vehicle and a lamppost. Due to the violent nature of the collision, Clark could no longer control the motorcycle and it fell onto the street.

27. On information and belief, Clark consciously suffered painful injuries and mental distress during and after the first and second collisions caused by Defendant Vansant, including pain arising from the injuries he sustained when he was propelled into the stopped vehicle, curb, and lamppost and from crashing onto the pavement.

5

28. Law enforcement officers, Summerville Fire Department, and Dorchester County EMS personnel arrived and rendered medical aid to Clark, but he was later pronounced dead at the scene.

29. The Berkeley County Coroner's Office ruled Robert Clark, Jr.'s death a "homicide" that was precipitated by the "appl[ication] of deadly force" by Defendant Vansant.

30. Despite Defendant Vansant's verbal recognition of the extreme recklessness and deliberate indifference to Clark's life posed by his high-speed pursuit, Vansant nonetheless continued in blatant violation of numerous policies and procedures governing the safe vehicular pursuit of suspects in Berkeley County.

31. The Berkeley County Sheriff's Office Policy and Procedure Manual ("Procedure Manual") addresses vehicular pursuits by its law enforcement personnel. Recognizing the threat to human life posed by police pursuits, section 507 of the manual states that "[v]ehicular pursuits will be strictly regulated with due regard for the potential danger to the public, agency personal, *and suspects involved in the pursuit*." (emphasis added).

32. To ensure adherence to this policy of conducting safe pursuits, the manual sets forth twelve pages of detailed rules and procedures for Sheriff's deputies to adhere to when conducting vehicular pursuits.

33. Section IV.A. of the Procedure Manual states that "[t]he decision to initiate pursuit must be based on the employee's conclusion that *the immediate danger to the employee and the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large*. Pursuit may be justified if the employee reasonably believes that the suspect, if allowed to flee, would present a danger to human life or cause serious injury." (emphasis added).

6

34. Mr. Clark presented no danger to anyone on the night of April 19, 2017 other than the minimal hazard posed by any member of the public traveling 20 miles an hour over the posted speed limit on a road with light traffic.

35. Section IV.B. of the Procedure Manual states that "[a]gency personnel initiating a pursuit will, in all cases, notify Central Communications of the pursuit and provide," among other information, the "reason for pursuit."

36. Defendant Vansant never notified Central Communications of the reason for his high-speed pursuit of Mr. Clark.

37. Having received no explanation from Defendant Vansant for his pursuit, Central Communications repeatedly asked Defendant Vansant to provide a reason for his chase. Defendant Vansant refused to do so.

38. After Central Communications learned that the pursuit would cross jurisdictions into Dorchester County, Central Communications notified the Dorchester County police dispatcher. During that conversation, the Central Communications dispatcher advised the Dorchester County dispatcher that she was "not sure exactly why" Vansant was in pursuit.

39. Section IV.B.6. of the Procedure Manual also states that "[w]hen engaged in pursuit, agency personnel will not drive with reckless disregard for the safety of others."

40. Defendant Vansant conducted his pursuit in reckless disregard for the safety of others, including the safety of Mr. Clark. Vansant drove his police cruiser through red lights, veered across double yellow lines into oncoming traffic, travelled at unsafe speeds, and tailgated Mr. Clark's motorcycle in a menacing way. Defendant Vansant repeatedly proceeded past red stop signals without slowing down as necessary for safe operation, exceeded the maximum speed limit without regard to whether he was endangering life or property, and disregarded regulations

governing direction of movement, all of which violated South Carolina law for operations of authorized emergency vehicles. *See* S.C. Code § 56-5-760.

41.     Section IV.C. of the Procedure Manual outlines "Supervisor Responsibilities" during a vehicular pursuit. In relevant part, it provides, "[w]hen made aware of a vehicular pursuit, the designated supervisor will . . . coordinate and direct activities as needed to ensure that proper procedures are used, and will have the discretion to terminate the pursuit."

42.     Defendant Peters, as the designated supervisor of Defendant Vansant's pursuit failed to ensure that Vansant followed proper procedures for conducting this pursuit.

43.     Defendant Peters, as the designated supervisor of Defendant Vansant's pursuit failed to exercise discretion to terminate the pursuit to protect the safety of Mr. Clark and other members of the public.

44.     Plaintiff is informed and believes that generally accepted police standards provide that ramming, boxing in, heading off or even driving alongside a pursued vehicle is only permitted if such actions are approved and only when deadly force is authorized. Section IV.D. of the Procedure Manual outlines "Pursuit Tactics." In relevant part, it states, "During the course of a pursuit, deliberate contact between vehicles or forcing the pursued vehicle into parked cars, ditches, or any other obstacle, boxing in, heading of, ramming or driving alongside the pursued vehicle while it is motion will be prohibited unless such actions are specifically authorized by a supervisor. *Such actions may be approved only when the use of deadly force would be authorized*. Reckless or hazardous driving maneuvers will not be duplicated by any pursuing vehicle." (emphasis in original).

45.     Defendant Vansant violated pursuit tactics policy and procedures in his chase of Mr. Clark by, among other reasons, engaging in reckless and hazardous driving maneuvers and negligently ramming Mr. Clark's motorcycle and causing it to crash.

46.     Plaintiff is further informed and believes that generally accepted policing standards and the Berkeley County Sheriff's Office policies and procedures required Defendant Vansant to terminate the pursuit when the risk of continuing exceeded the public safety benefit.  Section IV.F. of the Procedure Manual addresses "Termination of the Pursuit."  In relevant part, it states:

> The primary pursuing unit will continually re-evaluate and assess the pursuit situation including all of the initiating factors and terminate the pursuit whenever agency personnel reasonably believes the risks associated with continuing the pursuit are greater than the public safety benefit or making an immediate apprehension.
>
>    a.  The pursuit may be terminated by the primary unit at any time.
>
>    b.  The designated supervisor or a ranking command staff supervisor may order the termination of a pursuit at any time.
>
>    c.  A pursuit may be terminated if the suspect's identity has been determined, immediate apprehension is not necessary to protect the public or law enforcement personnel, and apprehension at a later time is feasible.

47.     Defendant Vansant, who was the primary unit in the pursuit, failed to evaluate and assess the pursuit situation and terminate it when the risk associated with continuing it outweighed the public safety benefit of apprehending Mr. Clark for speeding.

48.     On information and belief, Defendant Vansant had sufficient information to determine Mr. Clark's identity so that he could have been apprehended at a later time.  This information included the motorcycle license number and dash cam video clearly showing Mr. Clark operating the motorcycle as well as his clothing and other identifying features.

49.     Defendant Berkeley County Sheriff's Office, Defendant Peters, the designated supervisor, and ranking command staff supervisor likewise failed to terminate the pursuit when it

9

became clear that the risk to Mr. Clark and the public far exceeded the benefit of making an immediate apprehension.

50.     Section IV.G. of the Procedure Manual addresses "Inter-jurisdictional Pursuits." In relevant part, it states:

> (1) Agency personnel will notify Central Communications when it is likely that a pursuit will continue into a municipal jurisdiction or depart Berkeley County jurisdiction.
> …
>
> (4) Agency personnel conducting a vehicle pursuit will be restricted to Berkeley County jurisdiction and will not depart that county without *express permission* from a supervisor. **Justification to authorize an out of county vehicle pursuit must be predicated on a *serious imminent* threat to public safety**." (italics in original).

51.     On information and belief, Defendant Vansant did not receive express permission from Defendant Peters or any other Berkeley County Sheriff's Office personnel authorized to make such a decision before he continued his pursuit into Dorchester County. Nor was there any serious imminent threat to public safety posed by Mr. Clark that justified Vansant's continuing his pursuit into Dorchester County.

52.     On information and belief, Defendant Berkeley County Sheriff's Office and Defendant Peters, individually, was aware that Vansant intended to and did, in fact, continue the pursuit into Dorchester County, but did not authorize him to do so and failed to instruct him to terminate his pursuit before or after he crossed into Dorchester County.

53.     On information and belief, Defendant Berkeley County Sheriff's Office and Defendant Peters, individually, was aware that there was no serious imminent threat to public safety posed by Mr. Clark that justified Vansant's continuing his pursuit into Dorchester County.

10

54. Section IV.I. of the Procedure Manual addresses "Training" for vehicular pursuits. It provides that "Agency personnel operating assigned vehicles will be given initial and annual training in the agency's pursuit policy and defensive diving techniques."

55. On information and belief, the Berkeley County Sheriff's Office failed to provide Defendant Vansant with adequate, appropriate, and required initial and annual training of its vehicular pursuit policy.

56. On information and belief, Defendant Vansant received no other appropriate training on the Berkeley County Sheriff's Office vehicular pursuit procedures, or any other appropriate training on how to properly and safely conduct a vehicular pursuit.

57. Despite the broad and detailed policies and procedures governing vehicle pursuits, the Berkeley County Sheriff's Office and Defendant Peters, individually, failed to provide any meaningful supervision of Defendant Vansant during his pursuit of Mr. Clark.

58. Defendant Vansant's decision to continue his high-speed pursuit of Clark was unjustified and in violation of widely-accepted policing standards, including the policies and procedures promulgated by the Berkeley County Sheriff's Office.

**FOR A FIRST CAUSE OF ACTION**
**(Negligence Against All Defendants)**

59. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

60. Upon information and belief, Defendants owed statutory and common law duties to the public in general, and to Robert Clark, Jr. in particular, to use due care in fulfilling their law enforcement functions and duties and to ensure their conduct conformed to generally accepted police standards and the standards set forth by the Berkeley County Sheriff's Office.

61. On April 19, 2017, Defendants failed to use due care and were negligent as described above and in the following particulars:

   a. Failing to follow proper protocol and procedure for conducting a vehicular pursuit;

   b. Conducting the pursuit at unsafe speeds and failing to allow sufficient braking distance between Vansant's police cruiser and Clark's motorcycle;

   c. Failing to use the appropriate degree of force for the situation;

   d. Failing to terminate the pursuit after Vansant repeatedly failed to provide a reason for it;

   e. Concluding that the immediate danger posed to the public by an individual committing a traffic violation punishable with a minimum fine of $75 outweighed the danger to the public in continuing the pursuit;

   f. Permitting the pursuit to continue into into the Town of Summerville and Dorchester County absent a serious imminent threat to public safety;

   g. Operating Vansant's police cruiser as a deadly weapon to affect a traffic stop;

   h. And other such particulars as may be shown at trial.

62. All of the above referenced acts and/or omissions and/or commissions are in violation of the Berkeley County Sheriff's Office rules and procedures and common laws and statutes of the State of South Carolina, as well as the Defendants' obligations and duties to Decedent Clark.

63. As a direct, foreseeable and proximate result of the aforementioned negligent, grossly negligent, and reckless acts and/or omissions by Defendants, Decedent Robert Clark, Jr. suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, emotional anguish and death.

64. Due to the negligent, grossly negligent, and reckless acts and/or omissions of Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

## FOR A SECOND CAUSE OF ACTION
### (Negligent Hiring, Supervision and/or Retention
### Against the Berkeley County Sheriff's Office)

65. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

66. Upon information and belief, the Berkeley County Sheriff's Office owed statutory and common law duties to the public at large, and to Robert Clark, Jr. in particular, to refrain from negligently hiring, supervising and/or retaining employees.

67. Upon information and belief, the Berkeley County Sheriff's Office knew or reasonably should have known that Defendant Vansant did not have the proper training, disposition, and/or temperament to handle stressful situations or meet its departmental standards to the detriment of the public.

68. Upon information and belief, and based upon Vansant's work, temperament, and disposition as a law enforcement officer, Defendant Berkeley County Sheriff's Office knew or should have known that hiring and retaining Vansant as a Sheriff's deputy for Berkeley County presented a danger to the public at large, and to Robert Clark, Jr. in particular, and that it was foreseeable that Vansant would fail to perform his responsibilities in a reasonable manner that was consistent with Berkeley County Sheriff's Office policies and procedures as well as generally accepted law enforcement procedure and protocol.

69. In addition to hiring and retaining Defendant Vansant, the Berkeley County Sheriff's Office knew or should have known that their failure to provide adequate training to and

13

supervision of Vansant on proper procedures for conducting vehicular pursuits and the use of appropriate force during traffic stops would result in serious injury and/or death.

70. In its supervision of Defendant Vansant as a law enforcement officer, the Berkeley County Sheriff's Office failed to use due care and were negligent in the following particulars:

   a. Failing to properly train Vansant in the use of proper law enforcement procedure and protocol;

   b. Failing to adequately supervise Vansant during his pursuit of Robert Clark, Jr.;

   c. Failing to coordinate and direct Vansant's pursuit of Clark as needed to ensure that Vansant followed proper procedures for conducting the pursuit;

   d. Failing to order Vansant to terminate his pursuit of Clark to protect the safety of Clark and other members of the public after learning of Vansant's disregard of the rules, policies, and procedures for conducting vehicular pursuits including, but not limited to, Vansant's excessive speeding, Vansant's refusal to provide a reason for the pursuit when required to; and Vansant's crossing into Dorchester County to continue the pursuit in the absence of any serious imminent threat to public safety;

   e. Any and all other particulars as may be shown at trial.

71. The negligent hiring, training, and/or supervision of Defendant Vansant were each direct and proximate causes of Mr. Clark's injuries and death.

**FOR A THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Violation of Decedent's Fourth Amendment Rights**
**by Defendant James Vansant)**

72. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

73. At all times relevant hereto, the Defendant James Vansant was a deputy with the Berkeley County Sheriff's Office and acted under the color of state law and as such was well aware of his employer's policies and procedures as well as generally accepted policing standards

74. At all times relevant hereto, Defendant Vansant knew or should have known a motorcyclist under the facts and circumstances herein described did not pose a substantial and immediate risk of serious physical injuries to others.

75. Plaintiff is informed and believes; however, Defendant Vansant knew or should have known that striking a motorcycle with a police cruiser that weighed in excess of 5,000 pounds did pose a substantial and immediate risk of serious injury or death to Mr. Clark.

76. Plaintiff is further informed and believes no reasonable police officer would have used his vehicle to affect a stop of a motorcyclist under the existing circumstances then and there prevailing.

77. Decedent Robert Clark, Jr. was deprived of rights, privileges and immunities safeguarded by the Fourth Amendment of the U.S. Constitution, particularly his right to be free from the use of excessive and unreasonable force by Defendant Vansant.

78. Upon information and belief, the excessive and deadly force that Robert Clark, Jr. was subjected to was employed by Defendant Vansant in deliberate indifference to Clark's life and without any reasonable necessity to use any force, much less the excessive and deadly force that was employed without legal justification.

79. As a direct results of Defendant Vansant's unlawful use of excessive and unreasonable force, Robert Clark, Jr. was killed.

80. As a direct and proximate result of Defendant Vansant's violation of Decedent's constitutionally protected rights, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

### FOR A FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Violation of Decedent's Fourth Amendment Rights by Defendant John Peters)
### Individual Supervisory Liability

81. Plaintiff realleges and reincorporates all preceding paragraphs as if full set forth herein.

82. During all relevant times herein, Defendant Peters was acting under the color of state law, customs, practices, usage or policy as the designated supervisor and the Berkeley County Sheriff's Office patrol supervisor. As the designated supervisor and Lieutenant, Defendant Peters was in charge of patrol and any and all vehicle pursuits including the pursuit of Mr. Clark in this action.

83. During all relevant times herein, Defendant Peters was actively involved in the pursuit of Mr. Clark as the designated supervisor charged with ensuring that the vehicle pursuit conformed with the policies and procedures of the Berkeley County Sheriff's Office and generally accepted police practices for vehicular pursuit.

84. Defendant Peters possessed actual knowledge that the manner of pursuit was performed in a reckless manner and with complete disregard for the safety of the public generally and the decedent, Mr. Clark. Defendant Peters had actual or constructive knowledge of the conduct of Defendant Vansant and that conduct posed a pervasive and unreasonable risk of constitutional injury to Plaintiff and to citizens like Plaintiff.

85. Defendant Peters had a duty to supervise Defendant Vansant, a duty that include the duty to terminate the pursuit at issue in this action. Defendant Peters was grossly negligent in his supervision of Defendant Vansant in failing to terminate the pursuit despite actual and constructive knowledge that Defendant Vansant posed an unreasonable risk of violating the Constitutional rights of Plaintiff and the public generally.

86. Defendant Peters knew or should have known that his supervision of Defendant Vansant was inadequate and created the likelihood for potential harm such that Plaintiff suffered due to his specific actions and failures to act in the supervision of Defendant Vansant demonstrating the deliberate indifference of Defendant Peters to the Constitutional rights of the citizens of Berkeley County and Plaintiff individually.

87. As a direct and proximate result of the willful, knowing and grossly negligent acts and omission by Defendant Peters in supervising Defendant Vansant, Plaintiff has suffered damages as hereinafter set forth including death.

### FOR A FIFTH CAUSE OF ACTION
**(Survival Action Against All Defendants)**

88. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

89. As a result of the above referenced acts, Decedent Robert Clark, Jr. sustained serious injuries ultimately causing his wrongful death.

90. Pursuant to the South Carolina Survival Act, Plaintiff is entitled to bring all of the above-referenced and foregoing causes of action as the duly appointed Personal Representative of the Estate of Robert Clark, Jr.

91. Plaintiff alleges that as a result of the above referenced acts, Decedent Robert Clark, Jr. suffered conscious pain and suffering, personal injuries and trauma prior to his death, funeral

expenses, and other compensatory damages, and is entitled to punitive damages in an amount to be determined by a jury.

92. All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, and Defendants' obligations and duties to Plaintiff.

93. Each of these acts and/or omissions and/or commissions proximately caused Robert Clark, Jr.'s injuries and wrongful death.

94. Consequently, Plaintiff seeks actual and punitive damages and such other and further relief this Honorable Court deems just and proper.

**FOR A SIXTH CAUSE OF ACTION**
**(Wrongful Death Against All Defendants)**

95. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

96. As a result of the above-referenced acts and/or omissions, Decedent Robert Clark, Jr. suffered conscious pain and suffering, personal injuries and trauma prior to his death.

97. Pursuant to the South Carolina Wrongful Death Act, Plaintiff alleges entitlement to all of the above-referenced and foregoing causes of action as survivors and/or as the duly appointed Personal Representative of the Estate of Robert Clark, Jr.

98. As a direct and proximate result of Defendants' willful, wanton, reckless, grossly negligent and negligent acts as set out above, the Decedent's beneficiaries, as represented by Robert Clark, Personal Representative of the Estate of Robert Clark, Jr., have suffered injuries, which have caused, and in the future will cause, the beneficiaries to suffer one or more of the following elements of damage as to the survival and wrongful death claims:

    a. Pecuniary loss;

    b.  Conscious pain and suffering;

    c.  Mental shock and suffering;

    d.  Wounded feelings;

    e.  Grief and sorrow;

    f.  Loss of companionship; and

    g.  Deprivation of use and comfort of Robert Clark, Jr.'s society, including loss of his experience, knowledge, and judgment in managing the affairs of himself and his beneficiaries.

99.  Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Defendants as set out above, as well as his violation of state law, Plaintiff is entitled to compensation for funeral expenses and other compensatory damages and is entitled to punitive damages in an amount to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

i.  Judgment against Defendants, individually and joint and severally;

ii.  For actual damages, special damages, consequential damages, punitive damages and treble damages in an amount to be determined by the jury;

iii.  For costs of this action and reasonable attorney's fees;

iv.  And for all such other and further relief this Honorable Court deems just and proper.

Respectfully submitted,

**McLEOD LAW GROUP, LLC**

*s/ Michael Thomas Cooper*
Colin V. Ram (Fed. ID # No. 12958)
W. Mullins McLeod, Jr., (Fed. ID # 7142)
Michael Thomas Cooper (Fed. ID # 12198)
McLEOD LAW GROUP, LLC

Post Office Box 21624
Charleston, South Carolina 29413
Ph: (843) 277-6655 / Fax: (843) 277-6660
Michael@mcleod-lawgroup.com

and

**DAVID AYLOR LAW OFFICES**
David Aylor Bar No. 74974
24 Broad Street
Charleston, SC 29401

*Attorney for Plaintiffs*

October 15, 2019
Charleston, South Carolina